FILED

MAY 29 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

    PLAINTIFF

v

MARLON BROWN

    DEFENDANT

CASE NO CR-18-00535-001 VC

MOTION TO REDUCE SENTENCE

PURSUANT TO

18 U.S.C. § 3582 (c)(1)(A)(i)

## INTRODUCTION

The Defendant, Marlon Brown (hereafter referred to as "Brown") respectfully moves this Court pursuant to the newly-amended 18 USC § 3582 (c)(1)(A)(i) for an order reducing his sentence to time served or home confinement based on the risk of contracting COVID-19 while incarcerated. Brown's medical history could make him significantly at risk and potentially being fatally harmed by the coronavirus satisfies the "extraordinary and compelling reasons" standard under § 3582 (c)(1)(A)(i), as elaborated by the Sentencing Commission in U.S.S.G. § 1B1.13 After considering the applicable factors set forth in 18 USC § 3553(a), we respectfully request that the Court reduce Brown's sentence to time served or home confinement and modify the terms of supervised release to accommodate his release plan.

## JURISDICTION

On December 21, 2018 the President signed the First Step Act into law. Among the Criminal Justice Reforms, Congress amended 18 USC § 3582 (c)(1)(A)(i) to provide the sentencing judge jurisdiction to consider a defense motion for reduction of sentence based on extraordinary and compelling reasons whenever "the defendant has fully exausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30

1.

DAYS FROM RECIEPT OF SUCH A REQUEST BY THE WARDEN OF THE DEFENDANT'S FACILITY, WHICHEVER IS EARLIER [.]" FIRST STEP ACT OF 2018, § 603(b), PUB. L. 115-391, 132 STAT. 5194, 5239 (DEC. 21, 2018). IN THIS CASE, BROWN HAS SUBMITTED HIS REQUEST OVER 30 DAYS AGO WITH NO RESPONCE. BROWN IS AT HIGH RISK FOR FATALLY CONTRACTING COVID-19 WHILE INCARCERATED CONTINUED EXAUSTION MAY BE AN EXTREME HARDSHIP.

SENTENCE REDUCTION AUTHORITY UNDER 18 USC § 3582 (c)(1)(A)(i)

THIS COURT HAS DISCRETION TO REDUCE THE TERM OF IMPRISONMENT IMPOSED IN THIS CASE BASED ON § 3582 (c)(1)(A)(i), WHICH STATES IN RELEVANT PART THAT THE COURT "MAY REDUCE THE TERM OF IMPRISONMENT, AFTER CONSIDERING THE FACTORS SET FORTH IN [18 USC §] 3553(a) TO THE EXTENT THEY ARE APPLICABLE, IF IT FINDS THAT... EXTRAORDINARY AND COMPELLING REASONS WARRANT SUCH A REDUCTION... AND THAT SUCH A REDUCTION IS CONSISTENT WITH APPLICABLE POLICY STATEMENTS ISSUED BY THE SENTENCING COMMISSION [.]" IN 28 USC § 994(t), CONGRESS DELEGATED TO THE SENTENCING COMMISSION THE AUTHORITY TO "DESCRIBE WHAT SHOULD BE CONSIDERED EXTRAORDINARY AND COMPELLING REASONS FOR SENTENCE REDUCTION, INCLUDING THE CRITERIA TO BE APPLIED AND A LIST OF SPECIFIC EXAMPLES." AS RELEVANT HERE, THE EXAMPLES OF "EXTRAORDINARY AND COMPELLING REASONS" IN U.S.S.G. § 1B1.13 INCLUDE BROWN'S CIRCUMSTANCES:

> MR BROWN HAS NUMEROUS CONDITIONS DEEMED "HIGH RISK" BY CDC GUIDELINES INCLUDING DIABETES, SEVERE OBESITY, AND HIGH BLOOD PRESSURE. ALL OF WHICH WOULD QUALIFY AS 1B1.13 n.1(A)(ii)(I)
>
> MR BROWN IS 58 YEARS OLD AND HAS SERVED NEARLY 40% OF HIS TERM OF IMPRISONMENT AND EXPECTS TO BE RELEASED TO THE RESIDENTIAL REENTRY CENTER ON 12-09-2022 USSG § 1B1.13 COMMENT. n.1(B)(i) AND A 1(B)(iii)

2.

The Commission's standard has parallels under the Bureau of Prisons (BOP) Program Statement on Compassionate Release 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 USC §§ 3582 and 4205(g) at § 571.61(a)(1) (Jan. 17, 2019)(providing compassionate release consideration for inmates with end-of-life trajectory). Under the First Step Act, the BOP's program statement retains relevance only to the extent that its criteria are broader than the standards set by the Commission USSG § 1B1.13, Comment. n.1(D) (recognizing that the Director of the BOP can designate additional "extraordinary and compelling reasons other than, or in combination with, the reasons described in" the Commentary).

Relevant Facts and Procedural History

On 03/20/19, Mr Brown was sentenced to 60 months in prison upon his guilty plea to possession with intent to distribute a controlled substance. Mr Brown was 57 years old at the time of arrest and while Mr Brown knew many of his conditions during sentencing, the global pandemic of the Coronavirus could not have been foreseen nor mitigated his sentence.

Mr Brown has been in custody in connection with the present offense since his arrest on 03-20-2019, following a period of 4 months on supervised pre-trial release. This amounts to 14 months of actual incarceration. Counting good conduct time credits, he has the equivalent of a 51-month sentence. Mr Brown has maintained an exemplary conduct record while incarcerated having never received so much as a warning for behavior. He is currently housed in the mental health unit as a mental health ally. A group for individuals who have expressed interest in learning about mental health in an effort to increase understanding, empathy, support, and tolerance for individuals experiencing mental illness. He is enrolled in GED and ServSafe certification

3.

in preparation of eventual release. He has also worked in Food Service gaining training and on-the-job training as a cook whose program is accredited through the local Labor Department. He also has completed Drug education and his Financial Responsibility Plan paying court ordered fines and restitution.

ARGUEMENT

A. Mr Brown has established extraordinary and compelling reasons that warrants a Reduction in Sentence

The onset of the worldwide pandemic of Covid-19 has raised grave concerns over at-risk individuals, particularly older individuals with certain "core morbidities" as issues. Given the state of current BOP conditions and the likelihood of contracting Covid-19, despite measures implemented by the BOP. Mr Brown is significantly at risk and this risk increases daily of contracting the disease. Normal contagious or infectious diseases are known to run rampant through prison populations. And while BOP staff is doing what it can to mitigate the disaster, given worldwide shortages of PPE and tests including testing of asymptomatic individuals capable of transmitting the virus, it is likely to continue to be ineffective to prevent contraction of the disease. On 03/29/2020 the BOP reported 14 inmates and 13 staff had contracted the disease, with 1 death. On 05/10/2020, 39 days later, the BOP reported over 3,000 cases and 45 deaths. The 3,000+ cases are only counting confirmed inmate cases, not presumed positives or staff, and given the likelihood of mass infection continuing amongst the prison population and obvious limited healthcare available to combat infection, Mr Brown moves that his ability to provide self-care is greatly diminished. Even in a lockdown or modified lockdown situation, Mr Brown, is at great risk of contracting the virus and thus the disease

4.

from staff, cellmates, air circulation systems, phones, computers, ect. none of which, Mr Brown, can regulate or prevent. This clearly falls within the standard of "extraordinary and compelling reasons" under (A)(ii)(I)

The Court should recognize Mr Brown's efforts to secure BOP review of his case and conditions as sufficient.

B. With full consideration of the 3553(a) factors, Mr Brown's time served constitutes a sentence sufficient but not greater than nessicary to accomplish the goals of sentencing

Under all of the circumstances in this case, the Court should conclude that the time that Mr Brown has served is sufficient to satisfy the purposes of sentencing. Under Pepper v. United States, 562 U.S. 476, 490-93 (2011). The Court can, and indeed must, consider post-offense developments under § 3553(a), which provides "the most up-to-date picture" of the defendant's history and characteristics and "shed light on the likelihood that [the defendant] will engage in future criminal conduct." ID at 492.

Here, the overriding factor under § 3553(a) that was not present at the time of sentencing is Mr Brown's potentially fatal conditions. Although the circumstances of the planet offense and Mr. Brown's criminal history qualified him for the serious sentence this Court originally imposed, Mr Brown's health at the time of sentencing provided no indication that the sentence would be, in effect, a sentence to die in prison.

As recognized in the Sentencing Commission's policy statement on physical condition, extraordinary impairments provide reasons for downward departures for "seriously infirm" defendants, including to home detention at initial sentencing "as efficent as, and less costly than, imprisonment" USSG § 5H1.4; see also 18 USC

5.

§ 3553 (a)(2)(D) (CONSIDERATION OF PROVIDING NEEDED MEDICAL CARE IN THE MOST EFFECTIVE MANNER). MR BROWN'S PHYSICAL AND MENTAL CONDITIONS CONSIDERING THE CURRENT STAY AT HOME MEASURES IN PLACE THROUGHOUT THE U.S. REALISTICALLY REDUCES CHANCES OF RECIDIVISM. UNDER THE FIRST STEP ACT, MR BROWN WAS ASSESSED FOR RECIDIVISM RISK AND WAS FOUND AT "LOW" RISK. FURTHER UNDER THE RECENT CARES ACT AND RELATED MEMORANDUMS FROM ATTORNEY GENERAL BARR, MR BROWN WOULD ALREADY BE ELIGIBLE FOR HOME CONFINEMENT, HOWEVER CONFUSION HAS PLAGUED ITS IMPLEMENTATION (FORBES, LACK OF DIRECTION FROM BUREAU OF PRISONS SHOWING IN FEDERAL COURT (APR21)); SEE ALSO US V STAHL, CASE NO. 18CR694 (SDNY). FURTHER, AT 58 YEARS OLD, MR BROWN'S AGE SIGNIFICANTLY REDUCES HIS LIKELIHOOD OF RECIDIVISM. UNITED STATES SENTENCING COMMISSION, THE EFFECTS OF AGING ON RECIDIVISM AMONG FEDERAL OFFENDERS (DECEMBER 2017) HAVING UNDERGONE A PERIOD OF INCARCERATION, AND HAVING EXPERIENCED PHYSICAL AND MENTAL DETERIORATION, MR BROWN DOES NOT CONSTITUTE A DANGER TO ANY OTHER PERSON OR TO THE COMMUNITY.

MR BROWN HAS HAD EXEMPLARY GOOD CONDUCT RECORD, AND POSSESSES EMPLOYMENT WITH A IN-HOME HEALTH SUPPORT SERVICES AGENCY.

THIS COURT SHOULD CONCLUDE THAT THE 18-MONTH SENTENCE ALREADY SERVED HAS SUFFICIENTLY MET THE PURPOSES OF SENTENCING AFTER CONSIDERING MR BROWN'S EXTRAORDINARY AND COMPELLING CIRCUMSTANCES.

C. THE CONDITIONS OF SUPERVISED RELEASE SHOULD BE MODIFIED TO ACCOMMODATE THE REASONS FOR THE SENTENCING REDUCTION

MR BROWN HAS FORMULATED A SOLID RELEASE PLAN WITH THE ASSISTANCE OF FAMILY AND FRIENDS. THE PLAN INCLUDES LIVING WITH DAUGHTER CRYSTA BROWN IN SAN FRANCISCO, CA THIS INVOLVES HOME CONFINEMENT AND SOCIAL DISTANCING, EMPLOYMENT, AND DIETING TO REDUCE SUSCEPTABILITY. ACCORDINGLY, NO OTHER CONDITIONAL CHANGES ARE NESSICARY TO

6.

to effect a successful release plan.

Conclusion

For the foregoing reasons Marlon Brown, respectfully requests that the Court grant reduction in sentence to time served or home confinement and amend the conditions of supervised release as requested

Respectfully submitted this 23rd day of May, 2020

/s/ Marlon Brown